JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| International Oddities, Inc., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Mitchell M. Klein., an individual, MAK Advertising & Promotion, Inc., a Florida Corporation, and Does 1-5,<br><br>　　　　　Defendants. | Case No.:  11-cv-00347 CAS (SHx)<br><br>[PROPOSED] **CONSENT JUDGMENT AND PERMANENT INJUNCTION** |

　　　　WHEREAS, plaintiff International Oddities, Inc. ("IO" or "Plaintiff") has filed its complaint in the above-entitled action against Defendants Mitchell M. Klein, an individual ("Klein") and MAK Advertising & Promotion, Inc., a Florida corporation ("MAK") (collectively "Defendants") for trademark infringement, unfair competition, false designation of origin, dilution, and cyberpiracy, regarding IO's federally registered trademark KRYPTO®;

　　　　WHEREAS, Defendants are in the business of marketing and selling various products over the Internet and through distributors and retail outlets, including, without limitation, "herbal incense," sometimes referred to generically as "spice," in part, through websites owned, operated, or hosted by one or more of the Defendants and/or their affiliates;

WHEREAS, IO and Defendants have settled their dispute, there having been no adjudication on the merits, and have stipulated to entry of judgment, on the following terms and conditions;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. This Court has jurisdiction of the subject matter and over all of the parties.

2. The parties waive the right to appeal from entry of this Consent Judgment and Permanent Injunction.

3. Plaintiff is a corporation organized under the laws of the State of California, having an address at 927 Deep Valley Drive, No. 163, Rolling Hills, CA 90274.

4. Defendant MAK is a company organized and existing under the laws of the State of Florida, having an address at 5645 Coral Ridge Drive, Coral Springs, Florida 33076.

5. Defendant Mitchell M. Klein is an individual residing in Coral Springs, Florida.

6. IO's United States Trademark Registration No. 3,186,133, registered on December 19, 2006, for the mark KRYPTO in International Class 034 for non-tobacco smoking products ("Plaintiff's KRYPTO Registration") is valid and subsisting and is owned by IO. Plaintiff's KRYPTO Registration and its common law rights in the KRYPTO mark are collectively referred to herein as "Plaintiff's KRYPTO mark."

7. As a result of Plaintiff's extensive use and advertising, Plaintiff's KRYPTO mark has become well known to the industry and the purchasing public to designate smoking-related products originating from IO.

8. IO has superior rights to exclusive use of Plaintiff's KRYPTO mark vis-à-vis Defendants.

9. Defendants distribute, among other things, products in competition with Plaintiff.

10. The Court enters Judgment against Defendants and in favor of Plaintiff on all Counts set forth in Plaintiff's Complaint in this action (Court Docket Entry No. 1).

11. Within five (5) court days of entry of this Consent Judgment and Permanent Injunction, Defendants shall cause MAK's application for federal registration of the mark "KING KRYPTO HERBAL INCENSE (in design)," in International Class 003 for "incense," Serial No. 85106490, presently pending before the United States Patent and Trademark Office, to be expressly abandoned. Defendants shall serve Plaintiff with copies of all communications concerning Defendants' request for express abandonment of said application contemporaneously with their filing.

12. Defendants shall not in the future file or maintain an application for registration or a registration of any mark comprising or including Plaintiff's KRYPTO mark (or any other mark used or registered by Plaintiff listed in **Exhibit 1** hereto) or any reproductions, copies, counterfeits or colorable imitations thereof or any terms confusingly similar thereto, including without limitation the mark "KING KRYPTO," with the United States Patent and Trademark Office or any other governmental or state authority.

13. Subject to the provisions of Paragraphs 14 and 15 below, upon entry of this Consent Judgment and Permanent Injunction, each of the Defendants and each of their employees, agents, servants, successors and assigns and any entity he/it has an ownership interest in (unless it is a publicly traded company in which it/he owns or controls less than 5% of issued and outstanding voting stock, including any stock that could be converted into voting stock), controls directly or indirectly or for which he/it is an officer, director, or provides advice or direction, and all those in active concert and participation, or affiliated with one or more of them or under authority of one or

more of the Defendants who receive actual notice of this Consent Judgment and Permanent Injunction by personal service or otherwise, are hereby enjoined and restrained from:

    (a)    making, contributing to the making, or inducing others to make any use of a name, tradename, mark, URL, domain name, or computer code which comprises or includes Plaintiff's KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the mark "KING KRYPTO," especially any such use on or in connection with herbal incense, herbal tobacco substitutes or any smoking-related products and accessories (including, without limitation, lighters, pipes, matchbooks, or any similar goods), sold, offered for sale, distributed, or imported into the United States or otherwise advertised, marketed or promoted;

    (b)    offering for sale, selling, distributing, marketing, importing, advertising, promoting or giving away, or causing to be offered for sale, sold, distributed, marketed, imported, or given away any goods bearing Plaintiff's KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation, the mark "KING KRYPTO";

    (c)    shipping, delivering, distributing, returning (except as provided in Par. 14 below), or otherwise disposing of in any manner other than destruction of packaging, or from causing to be shipped, delivered, distributed, returned (except as provided in Par. 14 below), or disposed of (other than destroying packaging), products bearing Plaintiff's KRYPTO mark or any reproduction, counterfeit, copy or colorable imitation thereof or any term confusingly similar thereto, including without limitation, the mark "KING KRYPTO";

(d) displaying, advertising, or soliciting purchases, or causing to be displayed, advertised, or solicited, any product under Plaintiff's KRYPTO mark or any reproduction, counterfeit, copy or colorable imitation thereof or any term confusingly similar thereto, including without limitation the mark "KING KRYPTO," over the Internet or otherwise;

(e) registering, maintaining, promoting, using, trafficking in, or engaging in any activities (directly or indirectly) with any domain name, web page name or URL which includes one or more of Plaintiff's trademarks or any reproductions, counterfeits, copies or colorable imitations thereof or any terms confusingly similar thereto, including without limitation the <king-krypto.com>, <kingkrypto.net>, and <kingkrypto.org> domain names;

(f) maintaining, operating, or using (whether directly or indirectly) or inducing others (including, without limitation Affiliates) to maintain, operate, or use any web-page, home page, web site, website content (including, without limitation, that which appears on "hidden pages"), any code whatsoever (including but not limited to metatags, HTML, XTML, any computer code, domain names, URLs, sub pages, extensions, links, or any division or portion thereof, signs, banner ads, or any other visual media used in connection with either of the Defendants' goods/businesses) that contains Plaintiff's KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the mark "KING KRYPTO" (as used herein, the capitalized term "Affiliates" means third-party owned websites/domain names that link to one or more websites owned, hosted, and/or operated by one of more of the Defendants);

1   (g)   obtaining, registering, transferring, assigning, licensing, authorizing use, or otherwise displaying (directly or indirectly) of any domain name or URL which includes one or more of Plaintiff's trademarks or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the <king-krypto.com>, <kingkrypto.net>, and <kingkrypto.org> domain names, or undertaking any activities to promote or utilize such domain names;

(h)   identifying itself (directly or through its Affiliates) or any of its products over the telephone or by any other media (including the Internet) or printed matter as "International Oddities" or any confusingly similar term, or any reproduction, counterfeit, copy or colorable imitation of the "International Oddities" designation;

(i)   infringing, inducing others to infringe, or contributing to the infringement of any of Plaintiff's trademarks (listed in **Exhibit 1** hereto) or otherwise engaging in unfair competition with IO in any manner or engaging in any conduct tending to falsely represent or likely to confuse, mislead or deceive suppliers, purchasers, or any member of the public into thinking that one or more of the Defendants or their Affiliates or their products originate from or are affiliated with IO or that IO has otherwise sponsored, approved, or licensed any products or services of any of the Defendants or their Affiliates;

(j)   passing off, inducing or enabling others (including, without limitation, Defendants' Affiliates) to sell or pass off any product not Plaintiff's or not produced under the control and supervision of Plaintiff as approved by Plaintiff for sale under one or more of Plaintiff's trademarks (listed in **Exhibit 1** hereto); and

   (k) committing or contributing to any acts calculated to cause purchasers to believe that any products not Plaintiff's are those sold under the control and supervision of Plaintiff, or are sponsored or approved or connected with, guaranteed or produced under the control and supervision of Plaintiff, or otherwise infringing, inducing others to infringe, or contributing to the infringement of any of Plaintiff's trade names or Plaintiff's trademarks.

  14. The restrictions set forth in Sections 13 and 16 hereto and the other provisions of this document notwithstanding, Defendants may sell-off their existing packaged and labeled inventory of their "KING KRYPTO" product until no later than March 7, 2011 (the "Phase- Out Period"), after which any remaining inventory shall be destroyed, repackaged, or be relabeled (including through return by Defendants' customers to Defendants) to eliminate all traces of Plaintiff's KRYPTO mark (or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the mark "KING KRYPTO") from the packaging, as required under the provisions of this Consent Judgment and Permanent Injunction.

  15. The restrictions set forth in Sections 13 and 16 hereto and the other provisions of this document notwithstanding, Defendants may include the following clause in connection with an advertisement of their goods sold under their new brand name "KING KARMA" – not to exceed one single page ad in a single issue placed in the print version of Headquest Magazine, only, that may run for a total of no more than 30 days, beginning with the ad placed by Defendants on January 25, 2011 -- "KING KARMA formerly King Krypto," as depicted in the advertising specimen set forth in **Exhibit 2** hereto.  No changes may be made to the advertising specimen in **Exhibit 2**.

  16. IT IS FURTHER ORDERED that, subject to the provisions of Paragraphs 14 and 15 above, upon entry of this Consent Judgment and Permanent

7

1  Injunction, Defendants shall eliminate (and not thereafter resume use of) Plaintiff's
2  KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof
3  or any term confusingly similar thereto, including without limitation the mark "KING
4  KRYPTO," from all labels, products, packaging, website content (including, without
5  limitation, that which appears on "hidden pages"), any code whatsoever including but
6  not limited to metatags, HTML, XTML, any computer code, domain names, URLs,
7  sub pages, extensions, links, or any division or portion thereof, signs, banners and all
8  other visual media used in connection with their business and shall terminate its
9  advertising of Plaintiff's KRYPTO mark or any reproduction, copy, counterfeit or
10 colorable imitation thereof or any term confusingly similar thereto, including without
11 limitation the mark "KING KRYPTO," from all third party media (including, without
12 limitation, that of Defendants' Affiliates), including print advertising and the Internet.
13     17.    IT IS FURTHER ORDERED that, upon entry of this Consent Judgment
14 and Permanent Injunction, each of the Defendants shall eliminate any content,
15 including links, from any and all websites which they own, control, operate, have an
16 association or affiliation with or on which it/they otherwise advertise that causes or
17 tends to cause an Internet search engine to list or report a website – not selling goods
18 that originate from or are otherwise authorized by Plaintiff, including, without
19 limitation, Defendants' KING KRYPTO products – based on a search query that
20 includes one of Plaintiff's trademarks or any reproduction, copy, counterfeit or
21 colorable imitation thereof or any term confusingly similar thereto.
22     18.    IT IS FURTHER ORDERED that the Defendants shall serve a copy of
23 the Consent Judgment and Permanent Injunction, executed and entered by the Court,
24 via certified mail, with return receipt requested, upon each of their distributors,
25 together with a letter (substantively identical to the exemplar attached hereto as
26 **Exhibit 3**) instructing each addressee to cease any of the above-described prohibited
27 conduct.  Defendants shall serve a copy of a letter (substantively identical to the
28 exemplar attached hereto as **Exhibit 4**) on each of their retail outlet customers and

advertisers (print or electronic), via First Class Mail, with proof of mailing, instructing each addressee to cease selling, displaying, promoting, or advertising any KING KRYPTO labeled products.  Each of these letters shall also instruct Defendants' distributors and retail outlet customers to affix new labels over the labels containing the designation "KING KRYPTO," <u>for all goods bearing the designation KING KRYPTO in their inventory after March 7, 2011</u>, such that all traces of the designation "KING KRYPTO shall be eliminated from view from the packaging for their existing inventory of goods.  In the alternative, the distributor and/or retail outlet shall have the option of returning the remaining inventory to Defendants for replacement with goods complying with this Consent Judgment and Permanent Injunction.  Defendants shall serve the documents/letters specified above by no later than February 21, 2011 on each of the persons described above in this Section and to each such person who later comes to the attention of either of the Defendants or is otherwise identified by Plaintiff to Defendants as a person who is selling goods labeled KING KRYPTO.  In the event that this Consent Judgment and Permanent Injunction is not executed and entered by the Court by February 21, 2011, then Defendants shall send a copy of this Consent Judgment and Permanent Injunction – via Certified Mail, return receipt requested – to their distributors within three (3) days of its entry by the Court.  With regard to persons who are not distributors or retail outlets for Defendants' KING KRYPTO goods known to Defendants, who later come to the attention of either of the Defendants or are otherwise identified by Plaintiff to Defendants as persons selling goods labeled KING KRYPTO, Defendants may relieve themselves of the obligation to provide the notification specified in this paragraph by serving a sworn affidavit on Plaintiff, within five (5) days of having been made aware of their existence, stating that such persons are not selling goods that originate from Defendants or their agents somewhere in the chain of distribution.  In the event that an addressee – that is not owned or controlled by one or more of the Defendants – fails to refrain from any of the prohibited conduct set forth in this document or to comply as directed with the

relabeling instructions <u>by the March 7, 2011 deadline</u>, then, upon learning of such prohibited conduct or non-compliance, Defendants shall cease further sales to the addressee and disable any and all computer links (direct or indirect), if any, to any such non-cooperating entity/person and its websites, as the case may be, within three (3) business days thereafter and not resume sales or reestablish such links until the subject addressee complies as requested.  If Defendants become aware that one or more of the aforementioned addressees ceases, but later resumes, any of the aforementioned prohibited conduct, then Defendants shall suspend all sales and payments and disable any and all links (direct or indirect) to any such non-cooperating website, page, and person/entity, as the case may be, for a period of no less than six months from Defendants' awareness of the resumption, but in no event prior to the noncooperating party's compliance with the terms of this document.  If the addressee is affiliated with or owned or controlled by Defendants, then said addressee shall comply with the terms of this Settlement Agreement and the Consent Judgment and Permanent Injunction.  (As used herein, the terms "control" or "controlled" include, without limitation, any website or webpage located on one of the Defendants' servers).

19.    IT IS FURTHER ORDERED that, within five (5) business days after the entry of this Consent Judgment and Permanent Injunction, Defendants shall:

    (a)    deliver to Plaintiff through Plaintiff's counsel an affidavit in which they shall identify by name, address, and telephone number all third party advertising media, in which Defendants have placed any advertisement bearing the KING KRYPTO name or mark or any reproduction, counterfeit, copy or colorable imitation thereof; and

    (b)    cause Defendants' registration of the <king-krypto.com> domain name to be transferred to Plaintiff through the appropriate domain name authority and immediately provide Plaintiff with copies of all communications concerning Defendants' request for transfer.  Plaintiff

      shall, however, for a period of six months from the Effective Date, leave this domain name parked with no verbiage relating to any of the parties' products thereat and without linking said domain name to Plaintiff's websites.

20. Defendants shall, by no later than March 14, 2011, deliver to Plaintiff's counsel for destruction all labels, stickers, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing Plaintiff's KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the mark "KING KRYPTO." Alternatively, Defendants shall destroy all labels, stickers, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing Plaintiff's KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation the mark "KING KRYPTO," and shall deliver to Plaintiff's counsel by March 21, 2011, a sworn affidavit that they have so acted, the date of such destruction, and detailing the specific measures undertaken.

21. IT IS FURTHER ORDERED that each of the Defendants shall file with this Court, and serve on IO's counsel, a report in writing under oath setting forth in detail the manner and form in which that defendant has complied with Paragraphs 13 through 20 hereinabove by no later than March 21, 2011.

22. By no later than March 7, 2011, Defendants' distributors (including, e.g., without limitation, Internet Management Associates, Inc., Marc Douglas, and Lynn Douglas) and retail outlet customers (whether conventional or web-based) – who receive actual notice of this Consent Judgment and Permanent Injunction by personal service or otherwise – who have received or will receive goods – bearing Plaintiff's KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation, the mark "KING KRYPTO" – originating from the Defendants (or from anyone bound by the terms of

Paragraph 13 of this document) anywhere in the chain of distribution ("Defendants' Customers") shall cease selling, distributing, displaying, promoting, or advertising such products. In addition, with respect to any such goods – containing the KRYPTO mark or any reproduction, copy, counterfeit or colorable imitation thereof or any term confusingly similar thereto, including without limitation, the mark "KING KRYPTO" – in their possession after March 7, 2011, Defendants' Customers shall either destroy all such goods, affix new labels over the labels on such goods – such that all traces of the mark(s) shall be eliminated from view from the packaging – or return all such goods to the Defendants for relabeling in accordance with the terms of this Consent Judgment and Permanent Injunction.

23. In the event that Plaintiff believes that one or more of the Defendants' has not complied with one or more of the terms set forth in this Consent Judgment and Permanent Injunction, then, in lieu of Central District Local Rule 7-3 procedures, Plaintiff shall notify the Defendant(s) in writing specifying the nature of such noncompliance. Within seven (7) calendar days from receipt of such notice from Plaintiff, the Defendant(s) shall notify Plaintiff by written affidavit whether or not the activity complained of was/is connected with any product originating from Defendants or their agents. In the event that Plaintiff continues to believe that the Defendant(s) has/have not complied, or if the parties have not otherwise resolved the issue of noncompliance within that time to Plaintiff's satisfaction, then Plaintiff shall be entitled to initiate appropriate legal action. If Plaintiff notifies one or more of the Defendants of more than five (5) instances of noncompliance that prove to be connected with goods/activities originating from Defendants or their agents within a 180 day period, then Plaintiff shall be relieved of its duty to provide notice to Defendants under this paragraph.

24. This Court shall retain jurisdiction to construe, enforce, and implement this Consent Judgment and Permanent Injunction and the January 21, 2011 Mutual Settlement Agreement and Release entered into by the parties.

25. Plaintiff may issue subpoenas, pursuant to Fed. R. Civ. P. Rules 26 through 45, as appropriate to enable it to police and enforce compliance with this Consent Judgment and Permanent Injunction.

26. The prevailing party in any proceeding to enforce the terms of this Consent Judgment and Permanent Injunction shall be entitled to recover the attorneys' fees and costs incurred therewith.

Dated: February 9, 2011

*Christina A. Snyder*
The Honorable Christina A. Snyder
United States District Judge

# **STIPULATION**

IT IS HEREBY STIPULATED by and between the parties to the within action, through their respective counsel, that the foregoing Consent Judgment and Permanent Injunction may be presented to the Court for approval and, when approved and signed by the Court, may be entered herein, all without further notice, and each party waives all right to seek review and appeal or otherwise therefrom.

Respectfully submitted,

Dated: February__, 2011　　　　　　　　BROOKS KUSHMAN, P.C.

By: _____

Mark B. Mizrahi (CA Bar No. 179384)
mmizrahi@brookskushman.com
Lance M. Pritikin (CA Bar No. 250754)
lpritikin@brookskushman.com
**BROOKS KUSHMAN P.C.**
6701 Center Drive West
Suite 610
Los Angeles, CA 90045
Phone: (310) 348-8200
Facsimile: (310) 846-4799

Attorneys for Plaintiff,
International Oddities, Inc.

14

| | | |
|---|---|---|
| 1 | Dated: February___, 2011 | LOEB & LOEB, LLP |
| 2 | | |

By: _____

Laura A. Wytsma
lwytsma@loeb.com
**LOEB & LOEB, LLP**
10100 Santa Monica Boulevard
Suite 2200
Los Angeles, California 90067
Phone: 310.282.2251
Facsimile: 213.947.4561

Attorneys for Defendants,
Mitchell M. Klein, and MAK Advertising & Promotion, Inc.

Of Counsel:

Dated: February___, 2011     ARNSTEIN & LEHR LLP

By: _____
   Judith L. Grubner, Esq.
   jlgrubner@arnstein.com
   **ARNSTEIN & LEHR LLP**
   120 South Riverside Plaza
   Suite 1200
   Chicago, Illinois 60606-3910
   Phone: 312.876.7885
   Facsimile: 312.876.6275

Attorneys for Defendants,
Mitchell M. Klein, and MAK
Advertising & Promotion, Inc.